UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 12-23689-CIV-HUCK/O'SULLIVAN

GEORGE L. DE LA FLOR and
SUSANNE DE LA FLOR, his
wife, and as the natural parents and
guardians of TRISTAN ALEXANDER
DE LA FLOR, a minor, and
ANDRES JORGE LUIS DE LA FLOR,

              Plaintiffs,

v.

THE RITZ-CARLTON HOTEL COMPANY,
L.L.C, THE RITZ-CARLTON MANAGEMENT
COMPANY, L.L.C., MARRIOTT INTERNATIONAL,
INC., and DILIDO BEACH HOTEL CORPORATION,
a Florida corporation,

              Defendants.
_____/

## ORDER DENYING PLAINTIFFS' MOTION TO REMAND

THIS MATTER comes before the Court on Plaintiffs' Motion to Remand, to Take Judicial Notice and Incorporated Memorandum of Law, and Motion for Attorneys' Fees and Costs (D.E. No. 8), filed November 9, 2012.  The Court has reviewed the parties' submissions, the relevant legal authorities, and is otherwise duly advised.  For the reasons set forth below, Plaintiffs' Motion is denied.

### I.      BACKGROUND

This case arises out of an unfortunate incident involving Plaintiff George L. De La Flor ("De La Flor"), a California resident, during his stay at The Ritz-Carlton South Beach Hotel ("Ritz-Carlton South Beach"), while on vacation with his family.  During a workout in the hotel's fitness room, De La Flor suffered a sudden cardiopulmonary arrest — the technical term for a heart attack.  Defs.' Notice of Removal ¶ 2 (D.E. No. 1), filed October 11, 2012. Exercising next to De La Flor was, coincidentally, a surgeon who immediately came to his aid.  *See id.* at ¶ 2. The surgeon was unable to locate the fitness room's automatic external defibrillator ("defibrillator"), and instead began to perform cardiopulmonary resuscitation ("CPR").  *See id.*

1

Ex. A ¶ 9. In the meantime, a young boy at the scene called 911 for emergency assistance. *Id.* at ¶ 3. De La Flor survived the heart attack, but was left with permanent injuries. *Id.*

De La Flor was upset with Ritz-Carlton South Beach's failure to keep a readily accessible defibrillator in the fitness room, and filed an action in state court, *see id.* Ex. A, against the Ritz-Carlton Hotel Company, L.L.C., the owner of the property upon which the hotel sits (Dilido Beach Hotel Corporation), a management company that shares the Ritz-Carlton name (Ritz-Carlton Management Company, L.L.C.), and Marriott International, Inc. Defendants removed the case to federal court, *see id.*, claiming that diversity jurisdiction exists even though two of the defendants — Dilido Beach Hotel Corporation ("Dilido") and Ritz-Carlton Management Company, L.L.C. (Ritz-Carlton Management) — are residents of Florida. To do this, Defendants invoke the doctrine of fraudulent joinder, which provides that a plaintiff may not join parties solely to defeat federal jurisdiction. *See id.* at ¶ 5. At this stage of the litigation the Court's task is only to determine whether it has jurisdiction to entertain this case.

## II. DISCUSSION

Where a plaintiff files a lawsuit in state court, the defendant may remove the suit to federal court only if the plaintiff's suit arises under federal law or the parties on both sides of the "V" are residents of different states and the amount in controversy is greater than $75,000. *See* 28 U.S.C. §§ 1332(a), § 1441(a). Where defendants seek removal on the basis of diversity jurisdiction, each defendant must be from a different state than the forum state. *See id.* § 1441(b) (providing that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) . . . may not be removed if any of the . . . defendants is a citizen of the State in which such action is brought").

Because Dilido and Ritz-Carlton Management are both residents of Florida, *see* Defs.' Notice of Removal ¶ 11, it appears, at least a first blush, that the Court does not have jurisdiction. Defendants contend, however, that Plaintiffs filed suit against the hotel solely to keep the case out of federal court. *See id.* at ¶ 5. The federal courts frown upon this procedural tactic, and have come up with the so-called doctrine of fraudulent joinder. The doctrine "bars remand to state court" and is an "exception to the requirement of complete diversity." *Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011) (Posner, J.) (citation omitted).

As some courts have observed, the doctrine of fraudulent joinder is misnamed, as a showing of fraud, while sufficient, isn't necessary. One way a party can invoke the doctrine is to show,

2

by clear and convincing evidence, that "there is no possibility that the plaintiff can establish a cause of action against the resident defendant," *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011), as "a groundless claim does not invoke federal jurisdiction," *Walton*, 643 F.3d at 999.[1]  Defendants contend that Plaintiffs' suit against Dilido and Ritz-Carlton is utterly without merit and that the two resident Defendants were joined fraudulently — that is, for the sole purpose of defeating federal jurisdiction.

A review of Plaintiffs' theory of liability is in order.  Plaintiffs allege that, as a guest of the Ritz-Carlton South Beach, Defendants breached the duty they allegedly owed to De La Flor in failing to: (1) have a readily accessible defibrillator; (2) bring a defibrillator to the fitness room once it knew De La Flor was in danger; (3) call 911 within a reasonable time; (4) train its employees to timely deploy the defibrillator located onsite; and finally (5) escort Miami Beach Fire Rescue to De La Flor in an expeditious manner when they arrived on scene.  *See* Defs.' Notice of Removal Ex. B ¶ 11 (D.E. No. 1-2), filed October 11, 2012.  Thus, the essence of Plaintiffs' Complaint is that, as a guest of the Ritz-Carlton South Beach, Defendants owed De La Flor a basic duty to ensure that in the event of a medical emergency it had the basic tools necessary to assist him.  And in failing to take the steps Plaintiffs highlight, Defendants breached that duty.

Whether Plaintiffs have alleged a viable cause of action against Ritz-Carlton South Beach is not presently before the Court.  Rather, the scope of the Court's inquiry is limited to whether, in light of Plaintiffs' allegations, "there is no possibility [that] [P]laintiffs can establish a cause of action" against Dilido and Ritz-Carlton Management — the resident defendants.  *Henderson v. Washington Nat'l Ins. Co*, 454 F.3d 1278, 1281 (11th Cir. 2006) (citation and internal quotation marks omitted).  Defendants contend that because neither Dilido nor Ritz-Carlton Management possessed any control over Ritz-Carlton South Beach's operations they did not qualify as innkeepers and thus did not have a duty to assist De La Flor, a guest at the hotel, in the event of a medical emergency.  *See* Defs.' Notice of Removal ¶ 17.  The Court agrees.

Among the hypotheticals discussed in some first-year torts classes is whether an Olympic swimmer has a duty to rescue a drowning baby where the rescue effort poses no danger to the swimmer.  Our hearts say yes, but the law, of course, says otherwise.  *See* John C.P. Goldberg, *et*

---

[1] Fraudulent joinder also occurs where "the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell*, 663 F.3d at 1332.

3

*al.*, *Torts as Wrongs*, 88 TEX. L. REV. 917 (2010) ("A bystander who fails to save a drowning baby because he does not want to get his sleeve wet has committed no tort at all."). A well-established exception to this rule, however, provides that an innkeeper is "under an ordinary duty of care to [a guest] after he knows or has reason to know the [guest] is ill or injured." *L.A. Fitness Int'l, LLC v. Mayer*, 980 So. 2d 550, 557 (Fla. 4th Dist. Ct. App. 2008) (citing RESTATEMENT (SECOND) OF TORTS § 314A (1965)) (providing that an innkeeper has a duty to its guests to "give them first aid after [it] knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others"); *see also Abramson v. Ritz Carlton Hotel Co., LLC*, 480 Fed. App'x 158, 161 (3d Cir. 2012) (unpublished) ("Generally, there is no duty to affirmatively assist an injured person unless a special relationship, such as that between an innkeeper and its guests, exists between the parties.") (citing RESTATEMENT (SECOND) OF TORTS § 314A(2) (1965)). Thus, as Defendants contend, the important questions for the Court to answer here are: (1) Did Dilido and Ritz-Carlton Management have an innkeeper-guest relationship with De La Flor at the time of the incident in question? (2) If they did, did Dilido or Ritz-Carlton Management know or have reason to know that De La Flor was suffering a heart attack such that they were in a position to provide him with the proper medical assistance? The Court answers no to both questions.

The Court reviews a fraudulent joinder claim similar to the way it does a motion for summary judgment: the Court "evaluate[s] the factual allegations in the light most favorable to the plaintiff and resolve[s] any uncertainties about state substantive law in [P]laintiff's favor . . . ." *De Varona v. Discount Auto Parts, LLC*, 860 F. Supp. 2d 1344, 1346 (S.D. Fla. 2012) (citing *Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997)). The Court also "resolve[s] factual controversies in [P]laintiff's favor," but "only when there is some question of fact." *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005). "When a defendant presents an undisputed affidavit, the [C]ourt cannot resolve the facts in [] [P]laintiff's favor 'based solely on the unsupported allegations in [] [P]laintiff's [C]omplaint.'" *De Varona*, 860 F. Supp. at 1346.

Defendants contend that neither Dilido nor Ritz-Carlton Management owed a duty to De La Flor because neither had any control over the hotel's operations nor had any notice of his medical emergency. In support of this, Defendants advance two affidavits. One provides that at the time of Plaintiff's medical emergency and all times thereafter, "The Ritz-Carlton Hotel Company, L.L.C. [] maintained exclusive responsibility and complete control and discretion in

4

the day-to[-]day operations, direction, management and supervision of the Ritz-Carlton South Beach Hotel through an agreement with building owner and non-party Dilido Beach Resort, Ltd . . . ." Decl. of Deborah Nichols ¶ 9 (D.E. No. 1-5), filed October 11, 2012.  Ritz-Carlton Management, by contrast, has never "maintained any ownership interest or exercised any control over the day-to[-]day operations of The Ritz-Carlton South Beach Hotel or the management of its employees." *Id.* at ¶ 13.  Nor has it ever "maintained possession of the premises at The Ritz Carlton South Beach Hotel . . . ." *Id.* at ¶ 14.  Thus, Ritz-Carlton Management could not have been the innkeeper and De La Flor its guest.  (In light of this it is unsurprising that Ritz-Carlton Management learned of De La Flor's medical emergency only after he had already been taken from the hotel's property, thus establishing that Ritz-Carlton Management was not in a position to call for medical assistance.  *See id.* at ¶ 20; Defs.' Resp. 5 (D.E. No. 13), filed November 26, 2012).

The second affidavit likewise establishes that there is no possibility that Plaintiffs will be able to maintain a cause of action against Dilido.  Dilido's only connection to the Ritz-Carlton South Beach is that it is the fee owner of the land upon which the hotel is situated.  *See* Decl. of Bruce Lazar ¶ 8 (D.E. No. 1-6).  Dilido has never owned the Ritz-Carlton South Beach Hotel or any of its facilities.  *Id.*  Nor has Dilido exercised or had the right to exercise control or supervision over the Ritz-Carlton South Beach's operations or personnel.  *Id.* at ¶ 9.  And finally, Dilido received notice of De La Flor's heart attack well after the point at which any of its agents could have rendered assistance to him.  *Id.* at ¶ 10.

Plaintiffs do not dispute Ms. Nichol's declaration, *see* D.E. No. 1-5, that Ritz-Carlton Management no affiliation with the Ritz-Carlton South Beach Hotel.  Plaintiffs instead focus on Dilido and direct the Court's attention to various public records — specifically, Miami-Dade County property records, Dilido's articles of incorporation, and fire inspection reports — which Plaintiffs contend demonstrate that Dilido "own[s], operate[s] and manag[es]" the Ritz-Carlton South Beach.  *See* Pls.' Mot to Remand ¶ 16.

These documents do not demonstrate anything of the sort.  The Miami-Dade County property records show only that Dilido owns the property upon which the Ritz-Carlton South Beach sits.  *See* Pls.' Mot. to Remand Ex. A.  But owning property, on the one hand, and managing, operating, and supervising a facility situated on the property, on the other, are not one and the same — ownership of the land underlying a hotel does not, by itself, turn the landowner

5

into an innkeeper.  Furthermore, while Dilido's 2003 Articles of Incorporation provide that its purpose is to "acquir[e], own[], hold[], lease[], operat[e], and manag[e] the real property, hotel, and improvements," *see id.* Ex. B, a corporation's generally stated purpose does not bind the corporation to carry out that purpose.  Nor does it mean that the Dilido had a right to manage and operate the Ritz-Carlton South Beach Hotel at the time of the incident in question.  The City of Miami Beach Fire Department's inspection reports, *see id.* Ex. C, likewise do not establish that Dilido was involved in the daily operation and management of the Ritz-Carlton South Beach. The inspection reports provide only that Dilido was cited for various code violations.  But, as Defendants correctly note, *see* Defs.' Resp. 9-10, whether the City of Miami Beach requires that the alleged violator have a managerial, supervisory, or operational authority over a given property to be liable for a code violation relating to that property is not at all clear from the inspection report.  And the Court is not prepared to substitute conjecture for fact.

The Eleventh Circuit instructs that only where there is an "actual controversy" must the Court "resolve factual controversies in favor of the nonmoving party." *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) (citation omitted).  To create an actual controversy, the nonmoving party "must offer some hard evidence showing that its version of the [facts] is not wholly fanciful." *Johnson v. Niehus*, No. 11-12003, 2012 WL 4901137 (11th Cir. Oct. 16, 2012). Plaintiffs have not provided the Court with any hard evidence from which it can infer — even giving Plaintiffs the benefit of the doubt, as the Court must — that Dilido or Ritz-Carlton Management had any operational, managerial, or supervisory control of the Ritz-Carlton South Beach thus placing them in a innkeeper-guest relationship with De La Flor.  Thus, there is no possibility that Plaintiffs can hold Dilido or Ritz-Carlton Management liable for De La Flor's injuries.  This is especially true given that Plaintiffs do not counter Defendants' contention that neither Dilido nor Ritz-Carlton Management knew or had reason to know of De La Flor's condition — a critical factor in determining whether an innkeeper has a duty to render assistance to one of its guests.  *See* RESTATEMENT (SECOND) OF TORTS § 314A(2) cmt. e (1965) (noting that an innkeeper has no duty to come to his guest's assistance "where he neither knows nor should know of the . . . illness or injury").

The Court also finds that Defendants have proved by a preponderance of the evidence that the amount in controversy in this case is over $75,000.  *See AAA Abachman Enter., Inc. v. Stanley Steemer Intt'l, Inc.*, 268 Fed. App'x 864, 866 (11th 2008) (unpublished) ("Defendants

6

bear the burden of establishing the amount in controversy by a preponderance of the evidence."). Defendants correctly observe that where, as here, Plaintiffs' Complaint does not specify the amount of damages they seek, the Court may consider "pre-suit settlement offers and demands . . . in evaluating whether a case has been properly removed." *Katz v. J.C. Pnney Corp., Inc.*, No. 09-CV-60067, 2009 WL 1532129 (S.D. Fla. June 1, 2009); *see also AAA Abachman Enter.*, 268 Fed. App'x at 866 (considering demand letter when deciding amount in controversy).

In Plaintiffs' February 2, 2012 pre-suit demand letter to Defendants, Plaintiffs allege that De La Flor has paid "close to a half a million dollars" in medical bills, which "continue to mount daily, and will increase greatly, as [] De La Flor will need long-term care for his injuries in the millions of dollars." Decl. of Deborah Nichols ¶ 22 (D.E. No. 1-5). Plaintiffs also allege that De La Flor was a "very successful attorney with over 25 years of experience, who achieved several multi-million dollar results . . . [and] will never practice law again . . . ." *Id.* at ¶ 23 (internal quotation marks omitted). Against this background and drawing from the Court's judicial experience and common sense, the Court finds that Defendants have adequately shown that the amount in controversy exceeds $75,000.[2]

### III.   CONCLUSION

For the reasons stated above, it is hereby

ORDERED that Plaintiffs' Motion to Remand, to Take Judicial Notice and Incorporated Memorandum of Law, and Motion for Attorneys' Fees is DENIED.

It is hereby further

ORDERED that Plaintiffs' Motion for Stay of All Proceedings, Including the Response to Defendants' Motion to Dismiss, Pending Ruling on the Remand Motion to Return the Case to Miami-Dade Circuit Court (D.E. No. 10), filed November 14, 2012, is DENIED AS MOOT. Plaintiffs shall have until Monday, January 28, 2012, to file their Response.

---

[2] In their Motion to Remand, Plaintiffs make clear that they "do not dispute that the value of the claims for [De La Flor's] horrible brain damage will exceed the jurisdictional amount." Pls.' Mot. to Remand 11.

DONE AND ORDERED in Chambers, Miami, Florida, January 14, 2013.

_____
Paul C. Huck
United States District Judge

<u>Copies furnished to</u>:
All counsel of record